STATE OF NEBRASKA, APPELLEE, v. MONTE L. BOBO,
APPELLANT.

253 N. W. 2d 857

Filed May 25, 1977. No. 41075.

Dwight E. Smith of Smith & Wertz, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

In an information filed in the District Court for Cheyenne County on February 18, 1976, Monte L. Bobo, the defendant and appellant herein, was charged under section 28-4,125 (1), R. R. S. 1943, with knowingly or intentionally possessing marijuana, with intent to distribute, deliver, or dispense that controlled substance. Trial was had, commencing on July 6, 1976, and the jury found the defendant guilty as charged. Defendant has now ap-

pealed to this court, contending that the trial court committed reversible error in admitting in evidence hearsay testimony and an exhibit; and in determining that there was sufficient evidence to sustain the conviction. We reverse.

The primary evidence against the defendant was the testimony of David Waegli, who testified as follows. In November 1975, Waegli was a student at Western Nebraska Technical College near Sidney, Nebraska, and was employed as a "cooperating individual" by the Nebraska State Patrol. Waegli's job was to make buys of controlled substances for the State Patrol. On November 12, 1975, Waegli and one Bruce Grimbley drove from the college to Sidney in order to purchase a bag of marijuana. Grimbley, who was driving, told Waegli they were going to the defendant's house.

When they arrived, Waegli waited in the car while Grimbley went to the door. Waegli observed the defendant come to the door, and defendant and Grimbley went inside after talking a few minutes. Approximately 10 to 15 minutes later, Grimbley returned to the car and gave Waegli a clear plastic bag containing what appeared to be marijuana, which Waegli placed inside his shirt. Waegli acknowedged at trial that he did not observe the defendant giving Grimbley the bag, nor did he know whether persons other than the defendant were inside the house. Waegli testified he had never been to defendant's house before, had never talked to him, and was uncertain whether he had ever seen the defendant prior to this occasion. At this point in Waegli's testimony, the county attorney asked Waegli what Grimbley said to him at the time the bag was handed to Waegli, but the trial court sustained defendant's objection to the question on the ground of hearsay.

Waegli stated that he and Grimbley then left Sidney to return to the college. On the way, they en-

countered several acquaintances, one of whom was Brian Bitner. Bitner gave Waegli some money. Waegli first testified that this money was for the purchase of alcohol, but later indicated that the money was for the purchase of marijuana. Waegli and Grimbley then returned to the defendant's house, and on this occasion Waegli entered the house with Grimbley.

Waegli testified that the defendant was the only one in the house at that time, and that the defendant had no marijuana. In a short time, however, the defendant's brother arrived; he had a bag of marijuana like that which Waegli received after the first buy. This second bag was given to Waegli, and Waegli gave the money for the bag to Grimbley, who gave it to the defendant. Waegli placed the second bag inside his shirt, as he had the first bag.

Waegli and Grimbley then left, and went back to the college. When they returned, Waegli gave Bitner one of the bags of marijuana, but he did not know which one, as both bags he had placed inside his shirt were similar in appearance; and Waegli was unable to state which bag was from the first buy, and which was from the second buy. Waegli kept the bag he retained in his home overnight, and then turned it over to a local police detective the next morning.

The county attorney, at the conclusion of Waegli's direct testimony, again asked Waegli whether, at the time Grimbley gave the first bag of marijuana to him, Grimbley stated where he got the bag. The defendant again objected on the ground of hearsay. This time the trial court overruled the objection, stating that it found there had been sufficient evidence adduced to establish a conspiracy between the defendant and Grimbley so as to allow Waegli's conversation with Grimbley to be admissible in evidence. Waegli then testified that when Grimbley returned to the car after the first buy, he handed the

bag of marijuana to Waegli, and stated that it belonged to Waegli. The following questions were then asked by the county attorney and answered by Waegli: "Q. Did he have any other conversation with you when he handed it to you? A. Well, just that he had boughten (sic) it there, from Mr. Bobo. Q. He told you that he had bought if from Mr. Bobo? A. Yes, pretty sure." Grimbley himself was not present at trial, and was not available for questioning.

Other evidence adduced by the State consisted of testimony by various law enforcement officials and a laboratory technician. Their testimony established that the bag of leafy substance which Waegli turned over to the police was in fact marijuana, and that the contents of the bag had remained unchanged from the time it was given to the police detective by Waegli to the time of trial. This bag of marijuana was admitted into evidence as exhibit 1, over the objection of the defendant, who contended that the State had failed to establish a chain of possession of the bag from the time the defendant allegedly possessed it, to the time of trial. After the State rested, the defendant's motion to dismiss on the ground of insufficient evidence was overruled.

The defendant then produced alibi evidence. Two witnesses for the defendant were persons who lived with the defendant at the time he allegedly made the sales of marijuana. They and another witness testified that they thought the defendant was with them in Colorado at the time the crimes herein allegedly occurred, but all of them acknowledged that they were not sure of the date, and none could be absolutely sure that they were in Colorado on November 12, 1975, the date of the crimes, or whether it had been on another date close in time to November 12, 1975. The defendant's brother testified that he had not been in the defendant's house on the day in question, and that he had never seen Waegli or talked to

him prior to trial. At the close of all evidence, the defendant's motion for a directed verdict and to dismiss were overruled. As stated previously, the jury found the defendant guilty as charged.

In his assignments of error, defendant contends that the District Court erred in (1) admitting into evidence the hearsay testimony of Waegli concerning the statements made by Grimbley to Waegli at the time the first buy was completed; (2) admitting into evidence the bag of marijuana Waegli retained and turned over to the police, because there was insufficent evidence to show the chain of possession of that evidence; and (3) determining that there was sufficient evidence to sustain the conviction. These assignments of error will be discussed together because they are interrelated. The defendant's basic contention is that the hearsay testimony of Waegli was inadmissible, and that, without such testimony, there was insufficient evidence to show the chain of possession of the bag of marijuana retained by Waegli from the time it was allegedly possessed by the defendant to the time of trial.

It is elementary that objects which relate to or explain the issues or form a part of a transaction are admissible in evidence only when duly identified and shown to be in substantially the same condition as at the time in issue. Where objects pass through several hands before being produced in court, it is necessary to establish a complete chain of evidence, tracing the possession of the object or article to the final custodian; and if one link in the chain is missing, the object may not be introduced in evidence. See, 29 Am. Jur. 2d, Evidence, § 774, p. 844; State v. Allen, 183 Neb. 831, 164 N. W. 2d 662 (1969); State v. Gutierrez, 187 Neb. 383, 191 N. W. 2d 164 (1971); State v. Langer, 192 Neb. 525, 222 N. W. 2d 820 (1974).

In the present case, Waegli delivered one of the bags he obtained to Bitner, and that bag was not available for introduction as evidence at the trial.

There is no evidence in the record that the bag delivered to Bitner contained marijuana. Waegli did not know which bag he retained after the two separate purchases were made. The State concedes that as a result of that situation it had the burden of proving that the defendant was guilty of possessing marijuana, with intent to deliver the same, in both transactions. It was not possible for the State to prove the requisite chain of possession of the one bag of marijuana it had as evidence in regard to only one of the transactions, as it was unknown whether the bag the State had was the product of the first transaction, or the second.

Waegli admitted at trial that he did not see the defendant give the first bag of marijuana to Grimbley. Waegli only observed Grimbley going to defendant's house, the defendant answering the door, and Grimbley and the defendant going inside. When Grimbley returned to the car he gave to Waegli the first bag of marijuana. Waegli did not know whether persons other than the defendant were in the house. The only other evidence which would indicate that the defendant possessed, with the intent to deliver, the first bag of marijuana, was Waegli's testimony that Grimbley stated that he had purchased the bag from the defendant. The State apparently concedes that this testimony of Waegli was critical to prove that the defendant had possession of the first bag of marijuana, as it does not even contend that there was other evidence than this testimony to prove this fact. The defendant contends that the testimony was inadmissible as hearsay, and that the reception of this evidence was reversible error.

Section 27-801 (4) (b) (v), R. R. S. 1943, provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." This was the rule in Nebraska even prior to the enactment of section 27-801

in 1975. See, State v. Adams, 181 Neb. 75, 147 N. W. 2d 144 (1966); O'Brien v. State, 69 Neb. 691, 96 N. W. 649 (1903). Rule 801 of the Federal Rules of Evidence contains the same provision, and the federal rule is like the Nebraska rule. See United States v. Yow, Jr., 465 F. 2d 1328 (8th Cir., 1972). To be admissible, the statements of the coconspirator must have been made while the conspiracy was pending and in furtherance of its objects; and if the statements took place after the conspiracy had ended, or if merely narrative of past occurrences, they are not admissible. State v. Watson, 182 Neb. 692, 157 N. W. 2d 156 (1968); Stagemeyer v. State, 133 Neb. 9, 273 N. W. 824 (1937); Zediker v. State, 114 Neb. 292, 207 N. W. 168 (1926). See, also, 4 Weinstein's Evidence, paragraph 801 (d) (2) (E) (01), p. 801. The coconspirator exception to the hearsay rule is applicable regardless of whether a conspiracy has been charged in the information or not. United States v. Yow, Jr., *supra.*

The rule is well established that before the trier of facts may consider testimony under the coconspirator exception to the hearsay rule, a prima facie case establishing the existence of the conspiracy must be shown by independent evidence. See, State v. Merchants Bank, 81 Neb. 704, 116 N. W. 667 (1908); United States v. Nixon, 418 U. S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974); Annotation, Necessity and Sufficiency of Independent Evidence of Conspiracy to Allow Admission of Extrajudicial Statements of Coconspirators, 46 A. L. R. 3d 1148 at 1157. The purpose of requiring that the conspiracy be established by independent evidence is to prevent the danger of hearsay evidence being lifted by its own bootstraps, i. e., relying on the hearsay statements to establish the conspiracy, and then using the conspiracy to permit the introduction of what would otherwise be hearsay testimony in evidence. See, Glasser v. United States, 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680

(1942); People v. Braly, 187 Colo. 324, 532 P. 2d 325 (1975).

In the present case, the trial court concluded, after hearing Waegli's direct testimony, that sufficient evidence of a conspiracy between Grimbley and the defendant had been adduced as to permit Waegli's testimony of Grimbley's statements to be admitted in evidence. To establish a conspiracy there must be evidence of an agreement or understanding between the conspirators. The trial court did not specify exactly what the defendant and Grimbley had conspired to do. The State, in its brief, states as follows: "The conspiracy upon which the appellee relies would appear to include four persons. Brian Bitner, for whom the purchase was being made and to whom the marijuana was subsequently delivered, Mr. Grimbley, who actually made the purchase, the appellant who sold the marijuana to Grimbley, and the cooperating individual, Waegli." In so stating, we believe that the State has failed to distinguish between the two separate transactions involved in this case. Bitner, the individual to whom Waegli gave one of the bags of marijuana, was not involved in any way in the first transaction. The statement at issue, however, was made at the conclusion of the first transaction. There is absolutely no evidence that the first purchase was made by Waegli for the benefit of Bitner. In fact, the contrary appears to be true. After the first buy, Grimbley and Waegli were returning to the college, and met Bitner on the way. It was only then that Bitner gave Waegli money for the purchase of alcohol, which money was later used by Waegli to purchase the marijuana. Furthermore, there is absolutely no evidence in the record that the defendant or Grimbley was aware that any marijuana was to be delivered to Bitner, or any other person. Thus, the fact that Bitner received marijuana from Waegli is relevant only to the second transaction, and not to

the first. There was no evidence that the two transactions in this case were connected or part of a common scheme.

As we view the issue presented, the question is whether the State showed that a conspiracy existed between the defendant and Grimbley to sell the first bag of marijuana to a third person, in this case Waegli. The only independent evidence of such a conspiracy was that Grimbley went to the defendant's home, went inside, and returned with a bag of what appeared to be marijuana. There is no evidence of what transpired inside the house, or whether any other persons were inside. There is no evidence that the defendant was the one who provided the marijuana to Grimbley, or that the defendant agreed to sell marijuana to a third person through Grimbley.

Although no prior cases with analogous facts have been decided by this court, there are numerous cases in other jurisdictions which hold that such evidence is insufficient to show a conspiracy and therefore insufficient to trigger the coconspirator exception to the hearsay rule. In United States v. Stroupe, 538 F. 2d 1063 (4th Cir., 1976), a government agent attempted to purchase amphetamine from one Wright. Wright took the agent to the defendant's home, the agent waited in the car while Wright went inside, and Wright returned to the car with the amphetamine. When Wright handed the amphetamine to the agent, he pointed to the defendant, who had come outside his home with Wright, and stated: "That is my man I got the stuff from." Two weeks later Wright also made a statement to the agent indicating that the defendant had sold the amphetamine to Wright. The court held that the statements by Wright were inadmissible under the coconspirator exception to the hearsay rule because there was not sufficient independent proof to show that the defendant had conspired with Wright to sell ampheta-

mine. The court noted that the agent did not hear the defendant say anything about drugs to Wright, did not know whether other people were in the defendant's home, and did not see the defendant deliver amphetamine to Wright.

Similarly, in United States v. Tyler, 505 F. 2d 1329 (5th Cir., 1975), the evidence of an alleged conspiracy between the defendant and another person to distribute cocaine was held insufficient where the only independent proof of the conspiracy was that the other person visited the defendant's apartment shortly before he delivered cocaine to a government agent. In People v. Braly, *supra,* the court found that the defendant's presence in a house where a crime occurred was not sufficient evidence to establish a conspiracy between the defendant and other persons in the house at the time of the crime. Other cases with facts similar to those in the present case also hold that the evidence was insufficient to establish a conspiracy and permit admission of testimony under the coconspirator exception to the hearsay rule. See, Glover v. United States, 306 F. 2d 594 (10th Cir., 1962); Panci v. United States, 256 F. 2d 308 (5th Cir., 1958); Ong Way Jong v. United States, 245 F. 2d 392 (9th Cir., 1957); People v. Garcia, 201 Cal. App. 2d 589, 20 Cal. Rptr. 242 (1962); Annotation, 46 A. L. R. 3d, § 22(b), p. 1209.

Under the above authorities, we find that in the present case there was not sufficient independent evidence to establish a prima facie case of conspiracy between the defendant and Grimbley to sell the first bag of marijuana to Waegli. Other than the statements by Grimbley, Waegli had no independent knowledge of who sold Grimbley the first bag, or of what transpired in the defendant's house when Grimbley went there the first time. We reject the State's contention that both transactions were a part of a common conspiracy to deliver marijuana to Bitner, for, as stated previously, the evidence indicates

that the second transaction was unplanned at the time of the first transaction, and was entirely distinct and separate from the first transaction. Were this not so, Waegli, the cooperating individual, undoubtedly would have turned both bags of marijuana over to the authorities, instead of only one bag.

There is a further reason for holding the testimony concerning Grimbley's statements inadmissible in this case. As previously stated, statements by a coconspirator may only be used against a party when made in furtherance of the objects of the conspiracy. § 27-801 (4) (b) (v), R. R. S. 1943. The alleged statement by Grimbley of which Waegli testified, was made at the time, or shortly after, Grimbley gave the first bag to Waegli. The statement did nothing to further the object of a conspiracy between the defendant and Grimbley to sell marijuana to Waegli. The statement was not made toward the accomplishment of the alleged common object, and was therefore inadmissible under the coconspirator exception to the hearsay rule. See, Stagemeyer v. State, *supra;* Zediker v. State, *supra;* United States v. Yow, Jr., *supra.* Therefore, even if it were conceded that the evidence established a conspiracy, the statements were inadmissible because they were not made in furtherance of the conspiracy.

We conclude that it was error to admit into evidence the testimony of Waegli concerning the statements attributed to Grimbley. The State does not contend that there was sufficient evidence to connect the defendant with possession of the first bag of marijuana, with intent to deliver it, without that testimony. Having failed to prove, with admissible evidence, the defendant's guilt involving both transactions, an essential requirement because of Waegli's failure to keep the two bags separate and his inability to identify and distinguish between the one bag produced at trial and the one he delivered to Bitner, it was error to admit the bag retained by Waegli

in evidence at the trial. Although the State proved the defendant's involvement in regard to the second transaction, it could not prove that the bag retained by Waegli was the product of the second transaction, and therefore could not prove the requisite chain of possession of the second bag.

In light of the above conclusions, it is unnecessary to discuss other contentions of the defendant. The defendant's conviction is hereby reversed because inadmissible evidence was received at trial and considered by the jury, and the cause is remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.